Owen J. DUKE, Ann Duke Underwood and husband, Billy Eugene Underwood, Appellants,

v.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Corporation, Appellee.

No. 7791.

Court of Civil Appeals of Texas.

Texarkana.

March 7, 1967.

Rehearing Denied March 28, 1967.

Franklin Jones, Sr., Jones, Jones & Baldwin, Marshall, J. Alex Blakeley, Dallas, for appellants.

Jack W. Flock, Michael A. Hatchell, Ramey Brelsford, Flock & Devereux, Clyde W. Fiddes, Tyler, Albert B. Tarbutton, Jr., Daingerfield, for appellee.

DAVIS, Justice.

On July 14, 1962, Eddie Bolin Duke was driving a car within the City Limits of Omaha, Morris County, Texas, and while crossing a railroad the car was struck by a train belonging to St. Louis Southwestern Railway Company, which resulted in the death of Eddie Bolin Duke. Plaintiffs-appellants, Owen J. Duke, Ann Duke Underwood (daughter of Owen J. and Eddie Bolin Duke) and husband, Billy Eugene Underwood, sued plaintiff-appellee, St. Louis Southwestern Railway Company, for damages. Trial was to a jury. The jury answered the special issues as follows:

(Omitting the instructions, definitions, and issues not answered.)

"SPECIAL ISSUE NO. 1

"Do you find, from a preponderance of the evidence, if any, that the conditions surrounding the crossing in question immediately prior to the collision in question were such as to render such crossing more than ordinarily dangerous as the term is hereinafter defined?

ANSWER: 'WE DO' OR 'WE DO NOT.'

ANSWER: *WE DO*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 2

"Do you find, from a preponderance of the evidence, that the Defendant, St. Louis Southwestern Railway Company, knew, or by the exercise of ordinary care should have known prior to the collision in question, that the crossing in question was more than ordinarily dangerous, if you have so found?

ANSWER: 'YES' OR 'NO.'

ANSWER: *Yes*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence, that the failure of the Defendant, St. Louis Southwestern Railway Company, to install an automatic electric signal or warning device at the crossing in question, prior to the time of the said collision, was negligence on the part of said Defendant?

ANSWER: 'YES' OR 'NO.'

ANSWER: *No*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 5

"Do you find, from a preponderance of the evidence, that the Defendant failed to keep its right-of-way free of obstruction to the view of travelers approaching the crossing in question from the South going North?

ANSWER 'YES' OR 'NO.'

ANSWER: *Yes*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 6

"Do you find, from a preponderance of the evidence, that such failure to keep its right-of-way clear of obstructions, if any you have so found, was negligence?

ANSWER: 'YES' OR 'NO.'

ANSWER: *Yes*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence, that such failure of the Defendant to keep its right-of-way free of obstructions, if any you have so found, was a proximate cause of the death of Mrs. Duke?

ANSWER: 'YES' OR 'NO.'

ANSWER: *No*

"SPECIAL ISSUE NO. 8

"Do you find from a *perponderance* of the evidence that at the time and on the occasion in question the Defendant's train was being operated at an excessive rate of speed under the circumstances?

ANSWER 'YES' OR 'NO'

ANSWER *No*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 10

"What amount of money, if any, do you find, from a preponderance of the evidence, would, if paid now in cash, reasonably compensate the Plaintiff, Mr. Owen J. Duke, the husband of Mrs. Duke, for the losses sustained by him, if any, as a result of the death of his wife?

ANSWER BY STATING THE AMOUNTS, IF ANY, IN DOLLARS AND CENTS, OR NONE.

ANSWER: $30,000.00

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 11

"Do you find from a preponderance of the evidence that as defendant's engine was approaching the said crossing on the occasion in question within approximately 1500 feet, if it was, that such engine omitted a signal audible from such a distance?

Answer: 'We do.' or 'We do not.'

ANSWER *We do*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 12

"Do you find from a preponderance of the evidence that at such time and place, the Defendant's engine, by reason of its speed or nearness to such crossing was an immediate hazard?

Answer 'We do.' or 'We do not.'

ANSWER *We do not*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 13

"Do you find from a preponderance of the evidence that the Defendant's train was plainly visible before Eddie *Bolan* Duke's vehicle reached a point fifteen (15) feet from the nearest rail of the railroad track upon which the train was approaching?

Answer 'We do' or 'We do not.'

ANSWER *We do*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 14

"Do you find from a preponderance of the evidence that the Defendant's train was in hazardous proximity to the crossing in question before Eddie *Bolan* Duke's vehicle reached a point fifteen (15) feet from the nearest rail of the railroad track upon which the train was approaching?

Answer 'We do' or 'We do not.'

ANSWER *We do not*

\*   \*   \*   \*   \*   \*

"SPECIAL ISSUE NO. 15

"Do you find from a preponderance of the evidence that after Eddie Bolin Duke

stopped her vehicle within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of the railroad track upon which the train was approaching, she then proceeded when she could not do so safely?

Answer 'We do' or 'We do not.'

ANSWER *We do not*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 17

"Do you find from a preponderance of the evidence that at the time place and on the occasion in question Eddie Bolin Duke failed to keep a proper lookout?

Answer 'We do.' or 'We do not.'

ANSWER *We do not*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 19

"Do you find from a preponderance of the evidence that the failure of Eddie Bolin Duke to remove herself from the vehicle was negligence, as that term has herein defined?

Answer 'Yes' or 'no'

ANSWER *Yes*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 20

"Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to the preceding issue, was a proximate cause of the collision?

Answer 'Yes' or 'no.'

ANSWER *No*

"SPECIAL ISSUE NO. 21

"Do you find from a preponderance of the evidence that immediately before the collision in question Eddie Bolin Duke stopped her vehicle upon the main line of the Defendant's tracks?

Answer 'We do' or 'We do not.'

ANSWER *We do not*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 24

"Do you find from a preponderance of the evidence that at the time and on the occasion in question Eddie Bolin Duke failed to apply the brakes on her vehicle in sufficient time to avoid the collision?

Answer 'We do' or 'We do not.'

ANSWER *We do*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 25

"Do you find from a preponderance of the evidence that such failure, if any you have found in answer to the preceding issue, was negligence?

Answer 'We do.' or 'We do not.'

ANSWER *We do not*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 27

"Do you find from a preponderance of the evidence, if any, that under all the facts and circumstances before you, the Defendant's crew was, at the time of the collision, acting under an emergency?

Answer 'It was an emergency' or 'It was not an emergency'.

ANSWER *It was an emergency*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 28

"Do you find from a preponderance of the evidence, if any, that after the emergency, if any, arose Defendant's train crew did what ordinary prudent persons would have done under the same or similar circumstances?

Answer 'We do' or 'We do not'.

ANSWER *We do*

\* \* \* \* \* \*

"SPECIAL ISSUE NO. 29

"Do you find from a preponderance of the evidence that the emergency, if any, as inquired about was the sole proximate cause of the collision in question?

Answer 'We do' or 'We do not'.

ANSWER *We do not*

"SPECIAL ISSUE NO. 30

"Do you find from a preponderance of the evidence that the death of Eddie Bolin Duke was not the result of an unavoidable accident?

'Unavoidable accident' as that term is used in this issue, means an event which occurs without having been proximately caused by the negligence, if any, of any party to it.

"If you so find, let the form of your answer be 'It was not an unavoidable accident' or 'It was an unavoidable accident.' Answer *It was not an unavoidable accident.*"

Before the court accepted the answers of the jury, plaintiffs-appellees moved the court to refuse to accept the jury verdict and to retire the jury in order to resolve irreconcilable conflict in the findings of the jury in answer to the special issues submitted. This motion was overruled by the trial court.

Plaintiffs-appellees also filed their motion for a mistrial before the judgment was signed and entered. This motion was overruled in the final judgment of the court. The judgment of the court, after reciting that the case had been submitted to the jury and the jury's answers to the special issues, went on to say:

"Before receiving the verdict of the Jury as so returned, the Court examined the same and requested Counsel for the Plaintiffs and Defendant, respectively, to indicate *wheather* they thought the verdict was one that could be received, whereupon Council for Plaintiffs advised the Court that there was a conflict in the verdict and findings of the Jury in that the findings that the death of the deceased was proximately caused by the negligence of the deceased or the Defendant, or both, was in conflict with the findings of the Jury that there was not any negligence on the part of the deceased or the Defendant which proximately caused the death of the deceased, and further Plaintiff's Counsel advised the Court that the jury findings of no negligence which was a proximate cause of the collision on the part of the deceased or the Defendant conflicted with the Jury findings on unavoidable accident, and said counsel for the Plaintiffs' moved the Court to retire the jury so that they could consider further their verdict and reconcile their conflict.

"The Court denied the request of counsel for the Plaintiffs for the jury to be retired for further deliberation, and brought the jury in and Plaintiff's counsel thereupon requested that the jury be polled; whereupon, the Clerk of the Court read the Special Issues and answers thereto, in consecutive order, and once to the jury collectively, then called the name of each juror separately and asked each juror if the verdict read was his verdict, and each and all of the jurors replied in the affirmative, whereupon the findings and answers to all of the Issues were received by the Court and were filed and entered of record.

"The Court *beong* of the opinion that the motion for Judgment on the verdict being on file by the Defendant should be granted and concluded that Plaintiffs' motion for a Mistrial on file should be *overrulled* and Judgment entered on the verdict in favor of the Defendant St. Louis Southwestern Railway Company.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Motion of the Plaintiffs for a mistrial be, and the same is, hereby *overruled,* and that the motion of the Defendant for

Judgment on the verdict of the Jury be granted, and that Plaintiffs, Owen J. Duke and Ann Duke Underwood and husband, Billy Eugene Underwood, and each of them, take nothing of and from the Defendant, St. Louis Southwestern Railway Company, and that all costs of Court be *taked* against the Plaintiffs, jointly and severally, for which execution may issue."

From this judgment, appellants have perfected their appeal and bring forward only one point of error, which reads as follows:

*"Point One*

THE COURT ERRED IN FAILING TO GRANT THE APPELLANTS' MOTION FOR MISTRIAL AND NEW TRIAL BECAUSE OF THE IRRECONCILABLE CONFLICT IN THE FINDINGS OF THE JURY ON THE ONE HAND THAT THE NEGLIGENCE OF NEITHER THE DECEASED NOR THE APPELLEE PROXIMATELY CAUSED THE DEATH OF THE DECEASED, AND THE FINDING ON THE OTHER HAND THAT THE NEGLIGENCE OF EITHER OR BOTH THE DECEASED AND APPELLEE *DID* PROXIMATELY CAUSE THE DEATH."

Appellant did not file a motion for new trial. Appellee has filed a motion to dismiss the appeal because the appellant did not file a motion for new trial and raise the point of error and permit the trial court to again pass upon the same. Appellant did file a motion for mistrial. Appellee relies upon Rule 324, Texas Rules of Civil Procedure. The pertinent parts of Rule 324 reads as follows:

"In all cases tried in the county or district court, where parties desire to appeal from a judgment of the trial court, a motion for new trial shall be filed as a prerequisite to appeal; provided that neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in giving a peremptory instruction, or in withdrawing the case from the jury and rendering judgment, or in rendering or refusing to render judgment non obstante veredicto or *notwithstanding the finding of the jury on one or more special issues,* or in overruling a motion for judgment on the verdict made by the party who becomes appellant; nor shall a motion for new trial be required in a nonjury case or in a case where the appeal is based upon some error of the trial court arising after its action upon the motion for new trial." * * * (Emphasis added.)

In their first motion, appellants pointed out that the answers of the jury were in irreconcilable conflict and moved the court to send the jury back to reconsider the same. They also filed a motion for mistrial based upon the ground that the answers of the jury were in irreconcilable conflict. This was all done after the jury had answered the special issues and before a judgment had been signed and rendered. It appears that the motion for mistrial takes the same place as a motion for judgment non obstante veredicto which is definitely permitted by Rule 324. Miller v. Miller (TCA 1954) 274 S.W.2d 762, W.R.; Fenley v. Ogletree (TCA 1955) 277 S.W.2d 135, W.R., N.R.E.; City of San Antonio v. Gonzales (TCA 1957) 304 S.W.2d 429, W.R., N.R.E.; Tindall v. Tacconelly (TCA 1959) 328 S.W.2d 909, W.R., N.R.E.; Wagner v. Foster (TSC 1960) 161 Tex. 333, 341 S.W.2d 887.

In the event we are wrong in holding that a motion for new trial was not a prerequisite to the appeal, since the same point of error was raised in a motion for mistrial, the motion could be construed as a motion for new trial under the last paragraph of Rule 306c T.R.C.P., as amended April 12, 1962, effective September 1, 1962, which reads as follows:

"No motion for new trial or appeal bond or affidavit in lieu thereof or

notice of appeal shall be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the rendition of the judgment the motion assails, and every such appeal bond or affidavit or notice of appeal shall be deemed to have been filed on the date of but subsequent to the rendition of the judgment appealed from or from the date of the overruling of motion for new trial. if such a motion is filed."

The appeal bond and transcript were timely filed. If the filing of a motion for new trial is a necessary prerequisite to raising the point of error, it is no grounds to dismiss the appeal. If appellants waived the point of error by the failing to file a motion for new trial, we are in error in considering the same.

As a result of the motion for mistrial, we have carefully studied Wagner v. Foster, supra. We do not find anything in that opinion which requires a motion for new trial when the complaining party has raised the point of error in their motion for mistrial before the judgment is signed and entered. We think that part of Rule 324, which says, "notwithstanding the finding of the jury on one or more special issues", is controlling in the case at bar. In 41 Tex. Jur.2d 27, Sec. 1, in the definition of a motion for new trial, we find the following: "The purpose of a motion for new trial is to give the trial court an opportunity to pass on questions *that he has not theretofore had an opportunity to pass on.*" Emphasis added. The trial court had already had the opportunity to pass upon the motion for a mistrial and he did so in the judgment.

The motion to dismiss the appeal is overruled.

As we consider the point of error, we are confronted with two irreconcilable conflicts in the jury's findings. This seems to be exactly the position that was taken by the appellant in Bradford, et al v. Arhelger (TSC 1960) 161 Tex. 427, 340 S.W.2d 772. In that case, the trial court over-ruled the motion for *mistrial* and entered a judgment for the appellee. We, like the Supreme Court, are confronted with two irreconcilable conflicts. In this case, the conflicts are a little different than those in the Bradford case. In the Bradford case, the Supreme Court was confronted with the conflict between the finding of unavoidable accident and the finding that the defendant's negligence was a proximate cause of the injuries and a conflict between the finding of unavoidable accident and the finding that the plaintiff's negligence was a proximate cause of the injuries.

In this case, the conflicts are as follows: The findings of the jury that appellee was guilty of certain negligence as revealed by the foregoing special issues, and that the negligence was *not* the proximate cause of the injuries. Then, the finding of the jury that the accident was *not* unavoidable. This presents an irreconcilable conflict of the jury's findings. Likewise, the jury found that Mrs. Duke was guilty of negligence, but her negligence was *not* a proximate cause of the injuries. Then, the jury found that the accident was *not* unavoidable. This presents an irreconcilable conflict of the jury's findings.

In the Bradford case, supra, the Supreme Court said:

"Applying the test to the second conflict: If we disregard the finding of unavoidable accident and consider all of the rest of the verdict, a judgment for the defendant would be required because of the finding that the plaintiff's negligence was a proximate cause of the collision. If we disregard the finding that the plaintiff's negligence was a proximate cause of the collision and consider all of the rest of the verdict, we are left with findings that the defendant's negligence was a proximate cause of the collision and that the collision was an unavoidable accident. Quite obviously, in that situation a judgment could not be rendered for the defendant. The situation which then confronts us is just as though the jury

had found that the plaintiff was not negligent, that the defendant's negligence was a proximate cause of the collision and that the collision was an unavoidable accident. Such findings are themselves in fatal conflict and will not support a judgment. Bransford v. Pageway Coaches, 129 Tex. 327, 104 S.W.2d 471; Texas Interurban Railway Co. v. Hughes, Tex. Com.App., 53 S.W.2d 448."

The Supreme Court went on to say:

"The instant case presents jury findings which clearly indicate that this particular concept was unsound."

They went on to hold that they could not permit a verdict to stand where the findings were in such conflict. As indicated above, the jury findings in this case are in irreconcilable conflict.

The judgment of the trial court is reversed and the cause is remanded.